DAVID A. CHERNUS, DOING BUSINESS AS CHERNUS CONSTRUCTION COMPANY, RESPONDENT, v. KENNEDY-COATS CONSTRUCTION CO. ET AL., UNION INDEMNITY COMPANY, APPELLANT.—55 S. W. (2d) 744.

Kansas City Court of Appeals. November 21, 1932.

*Mahan, Mahan & Fuller* for respondent.

*Watson, Ess, Groner, Barnett & Whittaker* for appellant.

ARNOLD, J.—This is an action to recover on an indemnity bond. Plaintiff is a contractor doing business under the name of Chernus Construction Company. The appealing defendant is a corporation organized under the laws of the State of Louisiana, with its home office at New Oreleans in that State and doing business in the State of Missouri as a foreign corporation. The other defendant, the Kennedy-Coats Construction Company, is a partnership consisting of L. J. Kennedy and J. B. Coats, and carrying on a general road-building and contracting business, with headquarters at St. Joseph, Missouri.

The facts of record are that plaintiff had obtained a contract from the Missouri State Highway Commission for the construction of a section of a State highway in Caldwell county, Missouri, near Kingston referred to in the record as Project-Route 13, Sec. 7A. After the contract had been awarded plaintiff furnished an indemnity bond in the required amount with the U. S. Fidelity & Guaranty Company of Baltimore, Md., as surety. Plaintiff sublet the grading work called for by the main contract to the defendant, Kennedy-Coats Construction Company. To guarantee the perfomance of said sub-contract, defendant Union Indemnity Company executed a common-law bond in the penal sum of $30,000, in which the Kennedy-Coats Construction Company was principal, the Union Indemnity Company surety and plaintiff the obligee.

The work called for by the sub-contract and specified in the original contract which was made a part thereof by reference, was

completed by the Kennedy-Coats Construction Company and accepted by the State Highway Commissioners. The Kennedy-Coats Company, however, failed to pay certain laborers and materialmen and plaintiff instituted this suit, joining the Kennedy-Coats Construction Company and the Union Indemnity Company as defendants. No pleading was filed by Kennedy or Coats and issue was joined between plaintiff and the Union Indemnity Company. By stipulation, the cause was tried to the court without the aid of a jury, upon the issues made by the pleadings.

The amended petition alleges that claims amounting to $7,389.85, itemized therein, are unpaid and asks judgment against the Indemnity Company on account thereof. The record shows a number of the items of said account were eliminated on motion to strike and are not here involved. As to the remaining items, the court, after making certain findings of fact, entered judgment against the defendants in the total sum of $2,096.41, which included an attorney's fee of $300. Motions for a new trial and in arrest of judgment were overruled and defendant Indemnity Company has appealed.

The petition identifies the parties in relation to the cause of action and states plaintiff obtained from the State Highway Commission, on May 14, 1930, a contract for road work in Division No. 1 of the Highway Department, Caldwell County, Missouri, designated and known as "Route 13, Sec. 7A, 2.239 miles, 30' graded earth, Kingston north and south; bridge at station 403 plus 29.5 over Shoal Creek, 4.45' deck girders, 1 80' truss; at station 461 plus 25 over Log Creek, 3.45' deck girders, 1 110' truss, and that on the 13th day of May, 1930, the Chernus Construction Company entered into a contract with Kennedy-Coats Construction Company whereby the Kennedy-Coats Construction Company agreed to assume or subcontract and perform that part of the work consisting of the following, in conformance with the specifications of the Missouri State Highway Department:

"All grading, furnishing and laying culvert, culvert pipe, riprap, cobblestone, curb and gutter, clearing and grubbing and hedge pulling."

In consideration for said work the Kennedy-Coats Company was to receive the price paid by the Highway Commission under the origianl contract with Chernus, less five per cent to be retained by Chernus; that a certified copy of the Chernus-Kennedy-Coats contract was annexed to the petition, made a part thereof, and marked Exhibit A; and that this contract was thereafter submitted to the Highway Commission and approved; that on May 19, 1930, the defendant Kennedy-Coats Construction Company entered into the bond above described.

The petition alleges that said bond or contract of indemnity was issued for a valuable consideration and the premium therefor fully paid; that defendants Kennedy-Coats Construction Company, L. J. Kennedy and J. B. Coats failed to indemnify and hold harmless the Chernus Construction Company; that the said defendants failed, neglected and refused to pay for certain articles, commodities, materials and labor used in the doing of said construction work under the contract mentioned; all of said claims having been created by said Kennedy-Coats Construction Company, all of which were necessary to said work, and that demand for payment of said claims was duly made upon the defendant Kennedy-Coats Construction Company, and that thereafter claimants for said amounts duly presented their claims to plaintiffs as original contractors, and that said claimants threatened suit as a result of the refusal of the Kennedy-Coats Construction Company and J. L. Kennedy and J. B. Coats's refusal and failure to pay; and plaintiffs were compelled to pay said amounts, in the following particulars:

"To the Missouri Pure Iron Company of Moberly, Missouri, for corrugated metal pipe _____ $461.36

To the Panther Oil and Grease Company of Ft. Worth, Texas, for oil and grease _____ 128.52

To the Phillips Petroleum Company of Kansas City, Missouri, for gasoline _____ 3263.81

To the North Missouri Lumber Company of Polo, Missouri, for lumber _____ 4.55

$3,858.24"

The petition further states the following claims, which plaintiff considers lienable and collectible, have been presented but as yet have not been paid:

"Bram and Johnson of Kingsdon, Missouri, material ____ $ .70

Shainshower Hardware Company of Kingsdon, Missouri, dynamite, fuses and caps_____ 71.50

Saws, bolts and files _____ 9.27

A. L. Houghton, Kingsdon, Missouri, gasoline and oil, dynamite, prestone _____ 586.87

Union Carbide Sales Company of St. Joseph, Mo., carbide 7.50

Macwythe Company, Kenosha, Wisconsin, wire cable for steam shovel _____  _____ 105.58

H. D. Rainwater of Kingsdon, Missouri, for material ____ 2.60

Eugene Dingman of Polo, Missouri, sharpening blades on the job _____ 8.00

Ernest Otto of Kingsdon, Missouri, stone for gridge riprap 50.00

Enoch Smith of Kingsdon, Missouri, labor _____ 30.73

Allen Bascue of Kingsdon, Missouri, labor _____ 5.10

J. A. Dawson of Kingsdon, Missouri, labor and trip with
car _____ 10.17

Knutson Bros., Kansas City, Mo., dynamite and caps __ 60.15

Biller and Wetty of St. Joseph, Mo., purchase of truck
used on the job _____ 200.00

Leabo Garage of Hamilton, Missouri, repairs on machinery
made in shop _____ 21.50

St. Joseph Welding Company, of St. Joseph, Missouri,
repairs on equipment _____ 6.75

Shamrad Boiler Company of St. Joseph, Missouri, repairs
on equipment _____ 121.15

Jamieson Machine Company, of St. Joseph, Missouri, re-
pairs and equipment _____ 131.75

J. D. Adams Company, Indianapolis, Indiana, repair parts
for machinery _____ 44.78

Bristol Supply Company of St. Joseph, Missouri, repair
parts _____ 41.72

Marshall Auto Supply Company of St. Joseph, Missouri,
for repair parts _____ 11.58

Ross-Frazer Iron Company, St. Joseph, Missouri, repair
parts _____ 15.32

United States Fidelity & Casualty Company of Kansas
City, Missouri, for compensation insurance policy cover-
ing the job _____ 533.34

Millard Tire Shop, Cameron, Missouri, repairs and equip-
ment _____ 10.00

Ohio Power Shovel Company of Lima, Ohio, repair parts 139.35

Ernest Otto, Kingsdon, Missouri, damage to corn field and
corn _____ 23.85

Oscar Schmidt of St. Joseph, Missouri, rental on air com-
pressor used on job _____ 204.00

James G. Frazier of Kingsdon, Missouri, moving house
and damage to ground _____ 50.00

James Clark, Kingsdon, Missouri, log chain and rent ____ 6.00

J. A. Dawson, Kingsdon, Missouri, rent _____ 5.00

McFarlene Tractor Company, St. Joseph, Missouri, rent
on tractor _____ 1017.35''

The petition states the defendants, particularly the Union In-
demnity Company, have been notified of said loss sustained by plain-
tiff and said claims presented to plaintiff by reason of failure of
defendants to fulfill their contractual obligations; that defendants
and all of them have refused and still refuse to pay any of said

claims so listed, or any part thereof. It is alleged that by the laws of this State defendants are liable for all lienable claims created by said defendants in furtherance of the contract mentioned herein; that plaintiff has complied with all the terms and obligations imposed upon him under the terms of said contract of indemnity and bond, but that defendants and particularly the Union Indemnity Company, have neglected, failed and refused to pay any of the claims, or any part thereof, although payment has been demanded; that defendants are liable to plaintiff for all amounts paid by plaintiff in satisfaction of said claims, and in addition thereto, all amounts plaintiff will be compelled by law to pay in satisfaction of said listed claims.

Judgment is asked in "the sum of $50,000, the amount named in said bond, to be satisfied, however, by the payment of $7,389.85, together with interest thereon from the date of the payment of the claims now paid and together with all costs in this cause and a reasonable attorney's fee."

Thereafter, the Union Indemnity Company filed its motion to strike certain words and figures from said amended petition, being non-lienable items, as follows:

"1. From the item on page 4 referring to the Shainhower Hardware Company, the words and figures, 'Saws, boats and files, $9.27'

"2. The item on said page 4 reading, 'MacWythe Company, Kenosha, Wisconsin, wire cable for steam shovel, $105.58.'

"3. The item on said page 4 reading, 'Eugene Dingman, of Polo, Missouri, sharpening blades on the job, $8.00.'

"4. The item on said page 4 reading, 'Biller & Wetty, of St. Joseph, Missouri, purchase of truck used on the job, $200.00'

"5. The item on said page 4 reading, 'Leabo Garage of Hamilton, Missouri, repairs on machinery made in shop, $21.50.'

"6. All of the items of claims which are listed on page 5 of said amended petition and which plaintiff alleges have been presented to plaintiff for payment."

The motion to strike was sustained.

The separate answer of defendant Union Indemnity Company consists, first, of a general denial and admissions of certain allegations not in dispute. Then follows specific denial of certain material allegations contained in the petition, stating this defendant has no specific information in respect to certain claims which plaintiff alleges have been presented to him for payment; and in respect thereto and for want of such information, denies said claims and each of them; admits defendant has refused and still refuses to pay $30,000, or any part thereof to plaintiff. As affirmative defense, the answer pleads

and sets out the following section of the contract *between* plaintiff and defendant Kennedy-Coats Construction Company:

"The engineer will make a monthly estimate in *writing of the* materials in place, the amount of work performed during the preceding month and the value thereof at the unit price contracted. . . . From the total amount of work items and material allowances upon each monthly . . . estimate shall be deducted ten per cent to be retained until after the final acceptance of the entire work. The net amount due will be certified to the commission for payment."

Further, the answer avers plaintiff failed to conform to the method of payment defined in the above quoted clause of the contract; and that during the progress of said construction work plaintiff paid Kennedy-Coats Construction Company large sums of money in excess of the sums due and owing to said defendant company, and that in doing so, plaintiff violated the terms and conditions of said contract and the indemnity bond, to the prejudice and damage of the appealing defendant; that by reason of said excess payments, defendant Kennedy-Coats Construction Company diverted large sums of money and applied such excess payments to their own uses, and by reason thereof the appealing defendant was materially and substantially prejudiced in its rights under the indemnity bond, and by reason thereof, defendant is not liable to plaintiff in any sum whatever, on account of the matters and things alleged in the petition. The answer also avers it is provided in the indemnity bond in issue, as follows:

"No liability shall attach to the surety (meaning *this* defendant) hereunder unless in the event of any default on the part of the principal (meaning its codefendant Kennedy-Coats Construction Company) in the performance of any of the terms, covenants or conditions of said contract, the obligee (meaning the plaintiff) shall promptly upon knowledge thereof, and in any event not lated than thirty days after learning of such default, deliver to the surety at its office in the City of New Orleans, written notice thereof with a statement of the principal facts showing such default and the date thereof."

And the answer pleads that in violation of said quoted clause of the indemnity bond, that on or about November 19, 1930, plaintiff learned that the Kennedy-Coats Construction Company was indebted to the Phillips Petroleum Company in the sum of $3,000, and that said Petroleum Company claimed said indebtedness was for materials furnished on account of said construction work, and was lienable and collectible against the plaintiff and defendants herein. That, under the clause above quoted, it became and was the duty of plaintiff to notify the guarantor of such default; that plaintiff failed to

notify this defendant for more than thirty days, and that such failure has rendered said bond null and void; that defendant pleads the violation of the terms of said bond, as aforesaid, as a complete defense to the cause of action alleged in the petition.

Further answering it is alleged that during the progress of the work, without notice to defendant and in utter disregard of defendant's rights under the bond of indemnity, plaintiff employed and induced defendant Kennedy-Coats Construction Company to do and perform certain additional work and labor not covered by the written contract; that, as a direct result thereof said Kennedy-Coats Construction Company was required to and did lay out and expend large sums of money in the performance of said additional work; that sums of money were so diverted to the payment of said additional work and labor to the prejudice of defendant; that the employment of the Kennedy-Coats Construction Company to do such additional work and labor was in utter disregard and violation of the rights of this defendant, and constitutes a breach of the terms and conditions of its bond.

And it is further alleged plaintiff has not paid Kennedy-Coats Construction Company the full amount earned under said construction contract.

The reply consists of a general denial, and, further states plaintiff holds in his hands the sum of $2,397.60, which should be applied to the payment of necessary expenditures and obligations created by the Kennedy-Coats Construction Company in fulfillment of their contract, and that said amount should be allowed and applied on any judgment rendered in favor of plaintiff.

By stipulation the cause was tried to the court without the aid of a jury. The court made findings of fact and entered of record a judgment and decree herein, as follows:

"Now, at this day, this cause having heretofore been heard and taken under advisement on March 7, 1932, and the court being now fully advised in the premises, both find:

"1. The court finds that the plaintiff having entered into contract with the Highway Commission of the State of Missouri for the construction of a certain highway known and designated as 'Route 13, Section 7 (a),' in Caldwell County, Missouri, did by contract in writing, attached to and made a part of plaintiff's petition, sublet to the defendant Kennedy-Coats Construction Company, a co-partnership consisting of L. J. Kennedy and J. B. Coats and hereinafter in these findings referred to as 'Kennedy-Coats,' all grading, furnishing and laying of culvert, culvert pipe, rip rap, cobble stone, curb and gutter, clearing and grubbing and hedge pulling provided for by said general contract with said Highway Commission; that defend-

ant Union Indemnity Company for compensation, concurrently with the signing of said subcontract, entered into its bond of indemnity with the plaintiff wherein and whereby the defendant Union Indemnity Company, hereinafter in these findings referred to as the 'Indemnity Company,' agreed to indemnify and save harmless the plaintiff from pecuniary loss resulting from the breach of any of the terms, covenants and conditions of said sub-contract on the part of said Kennedy-Coats, and containing conditions and provisions as set forth in copy of said bond of indemnity attached to and made a part of plaintiff's petition.

"2. The court finds that Kennedy-Coats entered upon the performance of said sub-contract during the month of May, 1930, and thereafter continued in the performance thereof until the completion of the work to be done and performed by said Kennedy-Coats thereunder; and that said work was completed and was accepted by said Highway Commission on or about the 4th day of February, 1931.

"3. The court finds that in the performance of said contract said Kennedy-Coats have failed and refused to pay the laborers and materialmen, whose claims are hereinafter set out, and that by reason thereof the plaintiff has become legally obligated to pay and has paid the following claims:

| | |
|---|---|
| The Missouri Pure Iron Company of Moberly, Missouri | $ 461.36 |
| The Panther Oil & Grease Company of Fort Worth, Texas | 128.52 |
| The Phillips Petroleum Company of Kansas City, Missouri | 3263.81 |
| North Missouri Lumber Company of Polo, Missouri | 4.55 |
| Total | $3858.24 |

"4. The court finds that in the performance of said contract said Kennedy-Coats have failed and refused to pay the laborers and materialmen, whose claims are hereinafter set out, and that by reason thereof the plaintiff has become legally obligated to pay but has not yet paid the following claims:

| | |
|---|---|
| Spainhower Hardward Company of Kingston, Missouri | $ 71.50 |
| A. L. Houghton of Kingston, Missouri | 453.82 |
| Union Carbide Sales Company of St. Joseph, Missouri | 7.50 |
| Ernest Otto of Kingston, Missouri | 50.00 |
| Enoch Smith of Kingston, Missouri | 30.73 |
| Allen Bascue of Kansas City, Missouri | 5.10 |
| J. A. Dawson of Kansas City, Missouri | 2.17 |
| Knutson Brothers of Kansas City, Missouri | 60.15 |
| Total | $680.97 |

"5. The court finds that none of the other claims of laborers and

materialmen set up and described in plaintiff's petition are claims which the plaintiff is legally obligated to pay; that the total claims which plaintiff is legally obligated to pay is the sum of $4,539.21; that plaintiff now holds as the balance earned by said Kennedy-Coats in the performance of said contract the sum of $2,397.60; that after deducting said balance from the sum which plaintiff is legally obligated to pay, plaintiff has suffered a pecuniary loss by reason of the failure of said Kennedy-Coats to pay said claims in the sum of $2,141.61.

"6.   The court finds that the defendant Indemnity Company offered evidence at the trial of the above entitled cause to show that said Kennedy-Coats were entitled to additional compensation from the plaintiff on account of additional work performed in connection with said sub-contract in a sum exceeding the amount of plaintiff's pecuniary loss as hereinbefore set forth; that the offer of defendant Indemnity Company to prove said facts was refused by the court upon the theory that said evidence was beyond the scope of the pleadings herein, and was immaterial to any of the issues arising in the trial of this case.

"7.   The court finds that during the performance of said general contract by the plaintiff and said sub-contract by said Kennedy-Coats said Highway Commission, in conformity with said general contract, at monthly intervals caused its engineer to estimate in writing the amount of work performed under said contracts during the preceding month and to certify the same to said Highway Commission for payment; that payments were made to the plaintiff by said Highway Commission in accordance with said written estimates of twenty to twenty-five days after the actual estimates were made by the engineer.

"8.   The court further finds that the plaintiff, at various times during the time the road in question was under construction, made payments to the Kennedy-Coats Construction Company prior to the time of the receipt of the engineer's estimate for the current month; that said construction work progressed continuously to completion: that the engineer's estimate was received from twenty to twenty-five days after the actual estimate was made on the job; that while some of such payments were made previous to the receipt of engineer's estimates, yet in truth and in fact the work had been progressing continuously and at no time did the plaintiff make any payment during the progress of the work in excess of the amount actually earned by the said Kennedy-Coats Construction Company.

"9.   The court further finds that the defendant Indemnity Company was at no time prejudiced or injured by the payments so made as aforesaid, and that the money so paid by the plaintiff was used

for necessary labor, material and supplies going into said construction work.

"10. The court further finds from the evidence that the plaintiff received notice of default on the part of the Kennedy-Coats Construction Company, in the payment of the bills involved in this suit, on the 17th day of February, 1931; that promptly upon receipt of said knowledge and in thirty days thereafter the plaintiff notified defendant Union Indemnity Company of such default.

"11. The court finds that on the final estimate being made for the work under said sub-contract, the said Kennedy-Coats Construction Company was shown to have earned under said contract the sum of $27,427.98; after deducting the 5% due the plaintiff under the terms of said contract; that under the terms of said contract, the plaintiff should have retained from the amount due said company an amount equal to 10% of the amount earned as aforesaid; that the amount which should have been retained under the said contract was $2,742.80, whereas in truth and in fact, the plaintiff only retained the sum of $2,397.60; that by such over-payment the defendant Union Indemnity Company was prejudiced to the extent and amount of $345.20, and said defendant should have credit on plaintiff's claim for the amount last aforesaid.

"12. The court further finds that after allowing the credit of $345.20 last aforesaid, the plaintiff has been damaged in the sum of $1,796.41; together with a reasonable attorney fee, which the court fixes at $300, and that the plaintiff should have judgment for a total sum of $2,096.41, with costs.

"Wherefore, it is ordered, adjudged and decreed by the court that the plaintiff have of and from the defendants the sum of two thousand ninety-six dollars and 41/100 ($2,096.41), together with interest and costs and that execution issue therefor, to which defendants except."

Eleven assignment of error are presented and discussed under seven points and authorities. The first point urged is that under the express terms and provisions of the contract and bond in suit, the method of payment provided for by the main contract with the Highway Commission constitutes a part of the contract and bond. It is urged that it is well settled that when one written contract refers to another writing as part of it, the writing so referred to becomes a part of the contract. [Citing City of St. Louis v. Gaslight Co., 70 Mo. 69, 94.] This is a correct statement of the law. It is defendant's contention that the original contract between plaintiff and the Missouri Highway Commission provides that no payments shall be made unless and until the highway engineer shall have made a monthly estimate and certified the same to the commission for pay-

ment. The clause in the main contract relating to the method of payment is as follows:

"D-36. Method of payment. At monthly intervals the engineer will make an approximate estimate in writing of the materials in place complete, the amount of work performed during the preceding month, and the value thereof at the unit prices contracted. . . . From the amounts so ascertained there shall be deducted ten per cent to be retained until after the completion of the entire work as herein provided and the balance will be certified to the Commission for payment."

Manifestly it was the duty of the court to construe the contract; and, if the court was correct in its construction thereof, it is our duty to affirm its ruling. Plaintiff contends, and we think properly, that the contract does not provide a definite and specific time for payment; and the original contractor, Chernus, had the right to pay in any amount, and at any time he chose, so long as he did not pay more than the actual value of the work done and material furnished, in addition to retaining 10% of the entire value of the contract. This question arose in the case of Litchgi v. Gottlieb, 134 Mo. App. 237, 113 S. W. 1134, decided by the St. Louis Court of Appeals and by the Supreme Court (247 Mo. 53, 152 S. W. 310), on *certiorari*. The courts there held that where the contract is silent as to the time when payment should be made, the contractor could not demand payment until the work was completed; but, nevertheless, payment to the contractor by the owner before completion would not release the surety on the bond.

It is admitted plaintiff made certain payments before he received the estimates of the highway engineers; but the testimony is that at no time did he pay more than the value of the work done. There is no charge of overpayment, and the testimony supports the finding of the trial court in the construction of the contract. Unless it be shown defendant's rights were prejudiced, the above ruling is conclusive, and there is no such substantial showing here.

The second point urged as to the construction of contracts is that they must be given such construction as the parties themselves placed on them, and that inasmuch as the record shows that, at the beginning of the work plaintiff adhered strictly to payment of the amount of the estimates after the same were certified by the Highway Commission—after deducting the ten per cent and his own five per cent. We rule this fact does not establish the terms of the contract, as contended by defendant.

If a contract provide for certain payments at definite times, any variation from that contract in the matter of over-payment must be prejudicial to a surety for hire before that surety is released from

its obligation on the bond or contract of indemnity. [Union State Bank, Tr., v. Am. Surety Co., 324 Mo. 438, 449, 23 S. W. (2d) 1038; State ex rel. Concrete, etc., Co. v. Southern Surety Co., 221 Mo. App. 67, 81, 294 S. W. 123.] We rule this point against defendant.

Under point 3, defendant argues the requirement of a written estimate and certification thereof is for the benefit of the surety and constitutes a safeguard against diversion of funds; that both the estimate and certification are conditions precedent to payment. Under the terms of the clause in the contract above quoted, and our construction of it, we hold defendant's position in this respect untenable. The trial court held defendant was not prejudiced and there is substantial evidence to support the court's ruling thereon. It is the law that a written finding of a trial judge, sitting as a jury, is conclusive when based upon substantial evidence. [Niedt v. Am. Ry. Express Co., 6 S. W. (2d) 973; Haverstick v. Brookshire, 28 S. W. (2d) 432; Albert v. Dolan, 27 S. W. (2d) 438; K. C. Carpet Co. v. Smith, 25 S. W. (2d) 539, 540.] Defendant's citations on this point are found, on examination, not conclusive.

We have carefully read the long record in this case and fail to find the trial court erred in holding there is no substantial evidence that the Kennedy-Coats Construction Company was over paid at any time. Plaintiff's evidence on this point was not substantially refuted.

It is urged, under point 4 of points and authorities, that the surety in the case at bar, in fact, was prejudiced by the anticipated payments. It is pointed out the evidence shows that each time an anticipated payment was received, Kennedy immediately appropriated either all or a substantial part of such payment and ''transferred the same to his other pocket, the Russell Sales & Service Co.,'' and that by anticipating, Chernus made these diversions possible. The undisputed evidence shows that the Russell Sales & Service Company was an institution owned and controlled by L. J. Kennedy and doing business at St. Joseph, Mo.; that Kennedy, in the name of the Russell Sales & Service Co. advanced money to the Kennedy-Coats Construction Company to be used in the construction work of the latter, on the contract in issue; that when certain payments were made, all or part of such payments were used to reimburse Russell Sales & Service Co. However, the conclusion is not warranted that Kennedy-Coats was overpaid by the anticipated payments, nor may the conclusion be indulged that defendant was prejudiced by these facts.

There is another circumstance in connection with this point, to the effect that there was another construction contract in Ralls County, near Hannibal, Missouri. That also, was a grading contract, requiring power equipment. Kennedy-Coats was the lessee of a power

shovel which is referred to in the record as the "Lima outfit." The shovel had been used on the Caldwell County job, and Kennedy-Coats had agreed to pay the rental therefor. Kennedy and Chernus entered into a partnership with one Clark in Hannibal, Missouri, operating under the firm name of Clark, Kearney & Stark. Under this relationship, the Ralls County contract was taken. The shovel in question was moved from Caldwell County to Ralls. Plaintiff testified he had a ten per cent interest in that job which was agreed to be financed by Clark. The basis of defendant's complaint is that plaintiff paid Kennedy-Coats $800, which was used by Kennedy in payment of rent due on the shovel after its removal to Ralls County. The testimony shows the rental accrued for use of the shovel on the Caldwell County job and, therefore, it was the duty of the Kennedy-Coats Company to pay it. The testimony further shows plaintiff owed Kennedy-Coats on the Caldwell County contract sufficient to pay this item. We are unable to say the trial court was in error in holding the payment of this amount prejudiced defendant, and we may not convict the trial court of error in so holding.

It is further urged in support of this appeal, the trial court erred in refusing the offer by defendant of proof of the validity of the Kennedy-Coats claim for extras, for the reason that the claim was a material defense for the surety and could not be waived after default. Under the trial court's finding of facts No. 6, it is held the offer to prove such facts was refused, upon the theory that such evidence was beyond the scope of the pleadings and was immaterial to any issues arising in the trial of the case. Defendant argues the evidence was proper. This position is based, at least inferentially, upon the assumption that there was collusion between plaintiff and Kennedy in respect to the waiver of the claim for extras at the final settlement. It is clear the trial court's ruling was based upon the fact that collusion was not sufficiently pleaded to make it an issue in the case; and because such claim, if valid, arose on a separate and independent contract, being for work not included in the original contract for removing stone piers from an old bridge, back-filling the Shoal Creek bridge and removing false work therefrom, and other items called for by the main contract but not covered by the sub-contract.

The record discloses the larger item of $3024 was a claim for damages against Chernus for failure to build a bridge over Log Creek, resulting in delay; the next item of $1767 was also a claim for damages for failure of Chernus to complete the Shoal Creek bridge within a certain time. Some of the lesser items were paid by Chernus. The contract for these extras, as gathered from the record, was verbal and entered into after the original sub-contract was executed.

But whether written or verbal, such claim for extras was no part of the original contract between plaintiff and the Kennedy-Coats Company. There was no error in this respect.

It is urged the court erred in allowing plaintiff an attorney fee of $300, as part of the judgment for vexatious refusal to pay. Plaintiff's claim in this respect is based upon Section 5929, Revised Statutes 1929, authorizing the court to allow an attorney fee in an action against any insurance company to recover, the amount of any loss under a policy of fire, cyclone, lightning, life, health, accident, employer's liability, burglary, theft, embezzlement, fidelity, indemnity marine or other insurance. In construing this statute it was held in National Battery Co. v. Accident Co., 41 S. W. (2d) 599, that the insurer's liability is vexatious in the absence of reasonable ground therefor. It has been held that this section permits imposition of penalty on the insurer for refusal to pay, only where the refusal is without reasonable cause. [State ex rel., Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 298 S. W. 83; Miller v. Firemen's Ins. Co., 206 Mo. App. 475, 229 S. W. 261; Merkel v. Railway Mail Assn., 205 Mo. App. 484, 226 S. W. 299.] The statute bases plaintiff's right to recover an attorney fee upon defendant's vexatious refusal to pay. The bond does not provide for payment of an attorney fee. The record shows the demand of plaintiff was for $7,389.35. The amount recovered, exclusive of attorney's fee, was $1796.41. Plaintiff demanded more than $5000 of nonlienable items. Defendant refused to pay the amount asked on the ground that to have paid it would have been to pay, in part at least, an unlawful demand. We think the allowance of an attorney's fee, under the facts, was error. Defendant was not required to make a tender of a lesser amount than that contained on the face of plaintiff's demand. [Kahn v. Assurance Corp., 187 Mo. App. 216, 220, 173 S. W. 695; Fager v. Insurance Co., 189 Mo. App. 464, 176 S. W. 1064; Glover v. Insurance Co., 193 Mo. App. 489, 186 S. W. 583; Grand Lodge v. Insurance Co., 25 S. W. (2d) 783, 791.] We therefore rule the trial court was in error in assessing an attorney's fee.

Finally, it is urged the appealing defendant was substantially prejudiced by plaintiff's failure to notify it of the default respecting the Phillips Petroleum Company account, and that plaintiff's failure in this respect constitutes a valid defense to this suit. The trial court found plaintiff received notice of default on February 17, 1931. Defendant insists there is no evidence in the record to support this finding. It is admitted by plaintiff that the Phillips Petroleum Company wrote him in the latter part of November, 1930, that they had an unpaid bill against the Kennedy-Coats Company; but there is no evidence of record that at that time the Kennedy-

Coats Company was in default. There is evidence, however, that plaintiff asked Kennedy-Coats Company to straighten up this bill and notified his own surety company of the existing unpaid bill; and that they, in turn, had some conversation with representatives of appealing defendant concerning this particular bill, prior to Christmas, 1930.

There was sufficient evidence to support the finding of the court that there was no default within the meaning of the bond, until February 17, 1931, when Kennedy of the Kennedy-Coats Company told plaintiff of it in Hannibal, Mo., and delivered to plaintiff a list of unpaid bills which Kennedy-Coats would be unable to pay. The testimony shows this list was in the hands of Kennedy. The testimony further shows that the Caldwell County job was completed and accepted by the Highway Department on February 4, 1931. Plaintiff wrote defendant at its home office in New Orleans, La., on February 19, 1931, and explained the situation, enclosing a copy of the list of unpaid items delivered to him by Kennedy. We think these facts sufficient to support the court's ruling in respect thereto. We rule this point against defendant.

For the reasons above stated, if plaintiff, within ten days from the date of filing of this opinion, will remit the sum of $300 from the judgment of $2096.41, the judgment will be affirmed; otherwise it will be reversed and the cause remanded. All concur.