**AMERICAN PAMCOR, INC., Plaintiff-Appellant,**

v.

**Robert KLOTE, d/b/a Modern Electrical Devices, Defendant-Respondent.**

No. 33313.

St. Louis Court of Appeals.

Missouri.

Feb. 18, 1969.

Edmund C. Rogers, John T. Rogers, Kingsland, Rogers, Ezell, Eilers & Robbins, St. Louis, for plaintiff-appellant; William J. Keating, AMP Inc., Harrisburg, Pa., of counsel.

Marvin S. Wood, St. Louis, for defendant-respondent.

CLEMENS, Commissioner.

Suit for injunction and an accounting, brought by a distributor of electrical devices against its former sales manager. Basis of the suit is a non-solicitation clause in an employment contract whereby the defendant agreed not to solicit from plaintiff's customers, within a limited area and time, after his employment ended. The trial court denied relief and plaintiff employer appeals. We reverse and remand for determination of plaintiff's damages.

Our decision rests on two issues, one of fact and one of law: Did the defendant violate his non-solicitation agreement? Is it a reasonable restraint on employment enforceable in equity by injunction? We say yes to both questions.

First we note the scope of our review. We rule the case upon both the law and the evidence, weigh the evidence, and render such judgment as the trial court should have rendered. (Civil Rule 83.13(c), V.A.M.R.) The judgment shall not be set aside unless clearly erroneous, and although we make our own finding of facts we give due regard to the trial court's opportunity to judge the witnesses' credibility. (Civil Rule 73.01(d), V.A.M.R.) We also consider that injunction is a harsh remedy, granted only in clear cases. (Prentice v. Rowe, Mo.App., 324 S.W.2d 457 [8].)

We find little conflict in the evidence. The plaintiff's witnesses were the defendant, one of his employees, and its own sales manager, who followed the defendant in that position. The defendant offered no evidence. We find these facts:

Plaintiff sells electrical products, including terminals, connectors and tools for various purposes. The defendant formerly sold such products as plaintiff's employee and is now selling similar products on his own account.

All this began in 1956, when defendant started work as plaintiff's salesman. After eight years as a salesman he was promoted

to sales manager for the "St. Louis District", composed of Missouri, Kansas, and designated adjoining counties. As an incident to this employment as district sales manager, plaintiff and defendant entered into an employment contract for the year 1967. Thereby defendant was to get a salary of $1,000 a month, an "override" on sales in the St. Louis district, and reimbursement for his business expenses.

This 1967 agreement incorporated by reference an earlier agreement, of 1963, whereby defendant promised:

"*To keep confidential* during and subsequent to the period of said employment, except for those whom his authorized activities for the Company require should be informed, all information relating to the Company's business, its research or engineering activities, its manufacturing processes or trade secrets, its sources of supply or *lists of customers* and its plans or contemplated actions; and

\* \* \* \* \* \*

"Upon the termination of his employment to deliver up to the Company all lists of customers, samples, price lists and all other property belonging to the Company. *For a period of one year from the termination of his employment not to directly or indirectly, as to products competitive to those sold by the Company, solicit or accept business from any of the Company's customers that he had contact with in the territory he last serviced for the Company* prior to the termination of his employment." (Our emphasis.)

As district sales manager the defendant became acquainted with plaintiff's customers and their needs for electrical products. He called on customers with plaintiff's salesmen and handled customer complaints and credit inquiries. Most of his contacts with plaintiff's customers came from traveling with the salesmen. This was part of his job and he spent two or three days a week traveling with them. The defendant, as district sales manager, "lent prestige" to the salesmen's calls on customers and to plaintiff's products.

While employed by plaintiff, defendant made weekly reports itemizing calls on customers and money spent for business purposes. These reports show that in twenty-six weeks, selected at random, defendant called on fifty-one prospects and plaintiff reimbursed him for $3,041 for business expenses.

In September, 1967, as permitted by a termination clause in the employment contract, plaintiff summarily discharged defendant. The only reason it gave him was "a reduction in force." Defendant took no records or customer lists when he left.

Soon after his discharge defendant went into business for himself. He operated under the fictitious trade name of Modern Electrical Devices from an office on Gravois avenue in St. Louis. He had two salesmen, James Fritchman and William Craig, both of whom had been salesmen for plaintiff. As defendant's salesmen, Fritchman and Craig solicited orders for terminals, connectors and tools in the St. Louis district. Fritchman said he was now calling on all plaintiff's St. Louis customers. He has sold electrical terminals and connectors to some of plaintiff's customers whom defendant had contacted while he was plaintiff's sales manager.

Defendant's present mode of operation is to buy and stock electrical products, including terminals and connectors, from other suppliers, such as the Hollingsworth Company, one of plaintiff's competitors. Hollingsworth's products are similar to and have the same uses as plaintiff's products which defendant sold when employed by plaintiff. Defendant's salesmen transmit orders to him, by mail or telephone. He fills the orders and ships the products from his St. Louis office, and his customers make payments there. Defendant pays his salesmen their commissions by personal checks.

Those were the facts and we now recall defendant's agreement: " \* \* \* For a

period of one year from the termination of his employment not to directly or indirectly, as to products competitive to those sold by the Company, solicit or accept business from any of the Company's customers that he had contact with in the territory he last serviced for the Company prior to the termination of his employment."

We find factually that the defendant has breached that part of the employment contract. This leads to the issue of law: whether the non-solicitation clause is a reasonable restraint on employment enforceable by injunction.

■ This court discussed the limitations on post-employment restrictions in Renwood Food Products v. Schaefer, 240 Mo. App. 939, 223 S.W.2d 144 [1–4]. Although in early cases contracts restricting employment were generally considered against public policy, in time courts came to realize that an employer had a proprietary interest in its established business. So, courts allowed an employer to protect this interest by imposing *reasonable* restrictions upon an employee to prevent him from using confidential information, such as customer lists, to go into competition with his employer. To be reasonable, post-employment restrictions generally must be qualified as to time and place, and not be greater than required to protect the employer. (Renwood case, 223 S.W.2d 1. c. 151, citing Restatement of the Law of Contracts, § 515.) This has been Missouri law for at least a hundred years. (See Long v. Towl, 42 Mo. 545, 1. c. 549.)

In *Renwood* the plaintiff hired the defendant to sell its frozen foods in St. Louis. He agreed that for a year after leaving plaintiff's employment he would not engage in the frozen food business, or any competitive business, in St. Louis or any adjoining Missouri or Illinois county. We pointed out that the defendant salesman would naturally obtain a personal knowledge of plaintiff's customers and could entice them away if he went into business for himself. We found that the employment contract reasonably met the qualifications of time and place, and we upheld the injunction.

Similarly, in Farmers Underwriters Assn. v. Reid, Mo.App., 425 S.W.2d 247, the defendant insurance agent agreed that on termination of his agency he would not solicit from or sell to any of plaintiff's policyholders within the agency's district or any adjoining county for one year. The court found this non-solicitation clause was valid and enforceable by injunction. For other cases upholding similar restrictions, see Prentice v. Rowe, supra, 324 S.W.2d 457; City Ice & Fuel Co. v. Snell, Mo.App., 57 S.W.2d 440; Athletic Tea Co. v. Cole, Mo.App., 16 S.W.2d 735. The only contrary case cited by defendant is Kansas City Laundry Service Co. v. Jeserich, 213 Mo.App. 71, 247 S.W. 447. There the court refused to enjoin the discharged defendant salesman from soliciting plaintiff's customers. That case is readily distinguishable; there was no non-solicitation agreement.

■ The defendant advances other arguments to support the trial court's denial of injunction. Two written agreements were in evidence. The non-solicitation clause quoted above was taken from a memorandum signed by the defendant, but not by the plaintiff, in 1963. As said, the 1967 agreement adopted the quoted non-solicitation clause by reference and both parties signed it. The trial court apparently gave weight to defendant's contentions at trial that the 1963 agreement was void for lack of mutuality and was vague about the territory last served by the defendant. These arguments miss the point. Plaintiff's suit was based on the 1967 contract; the 1963 contract was relevant only as the source of the non-solicitation clause. By identifying the 1963 non-solicitation clause and incorporating it by reference into the 1967 contract, it was as effective as if it had been written therein word for word. (Chernus v. Kennedy-Coats Const. Co., 227 Mo.App. 582, 55 S.W.2d 744 [1].)

The defendant stresses the lack of evidence to show he personally contacted plaintiff's customers after going into business for himself. That argument ignores the words of the non-solicitation clause, "not to directly or indirectly * * * solicit or accept business," etc. By allowing his salesmen to go into the forbidden territory and by accepting and filling their orders, the principle of respondeat superior makes personal contact immaterial.

■ The defendant would distinguish the facts here from the cases cited above upholding non-solicitation agreements. There, argues defendant, the employees first made plans to compete and then quit, taking customer lists with them; while here, defendant made no such prior plans, was summarily fired, and took no records. However appealing that argument may be, it does not free us from following the maxim that equity follows the law. We must accord the parties their lawful rights as they set those rights by their contract. (Tamko Asphalt Products, Inc. v. Fenix, Mo.App., 321 S.W.2d 527 [17].) As Judge Cardozo has said, a chancellor in equity is not a knight-errant roaming at will in search of his own ideals of virtue and what is right between man and man. (See Jackson Savings & Loan Assn. v. Seabaugh, Mo.App., 395 S.W.2d 260 [10].) We must reject defendant's plea.

■ Reverting to the issue before us, we find the restrictions imposed on this defendant were less stringent than those in the above cited non-solicitation cases. Here, the restriction on defendant was not only limited by time and place, but was further limited to those of plaintiff's customers whom he had contacted in his territory and to products competitive with plaintiff's. We cannot say the restriction was more than was reasonably required to protect plaintiff's interest in its established business. The non-solicitation agreement being reasonable and the defendant having breached it, the trial court erred in denying injunctive relief. (City Ice & Fuel Co. v. McKee, Mo.App., 57 S.W.2d 443 [3].)

The parties disagree about disposition of the case. The plaintiff urges us to remand it to the equity division for an accounting and award of damages. Defendant contends that even if the injunction should have been granted (as we have held), that issue is moot since the one-year restrictive period has expired; and therefore the only remaining issue is plaintiff's damages, an issue of law. We hold, as plaintiff contends, that the case is still one of equitable jurisdiction. Our reason follows.

■ Recall that Civil Rule 83.13(c) requires us to give such judgment as the trial court should have given. But we cannot grant the injunctive relief. This, because the plaintiff's conduct sought to be enjoined has already taken place. That issue is moot. (Hribernik v. Reorganized School Dist. R-3, Mo.App., 276 S.W.2d 596 [2, 3].) Since equity may award damages in a suit for injunction (Thompson v. Hodge, Mo.App., 348 S.W.2d 11 [10]), the trial court *should* have proceeded to ascertain and award damages to the plaintiff. In deciding now whether the cause should proceed at law or in equity, we consider the fundamental principle that when equitable jurisdiction once attaches it will remain for all purposes connected with the controversy. (Godwin v. Graham, 360 Mo. 418, 228 S.W. 2d 789 [10].) Of course, where a plaintiff fails to establish his right to equitable relief and only legal issues remain, the cause becomes one of law. (Ebel v. Roller, Mo. App., 21 S.W.2d 214 [1].) But that is not our case. We have held that plaintiff did establish its right to equitable relief at the time the suit was tried. That jurisdiction was not defeated by subsequent changes— here, the expiration of the one-year limitation. (Pittman v. Faron, Mo.App., 315 S.W.2d 836 [3–5]; Supreme Lodge, Knights of Pythias v. Dalzell, 205 Mo.App. 207, 223 S.W. 786 [1]; 30 C.J.S. Equity § 74.) Reverting to our obligation to do now what the trial court should have done

at trial, we remand the cause for further proceedings in equity.

Since the trial court denied the injunction, improperly, it did not reach the question of plaintiff's prayer for an accounting and award of damages. On remand the court should proceed to determine plaintiff's damages, with the aid of an accounting if that be deemed advisable.

The judgment is reversed and the cause is remanded for further proceedings in equity.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is reversed and the cause is remanded for further proceedings in equity to determine plaintiff's damages.

RUDDY, P. J., and WOLFE, J., concur.