CYRUS T. BRADY, Appellant, v. THE NEW JERSEY FIDELITY INSURANCE COMPANY, Respondent.

Kansas City Court of Appeals, May 18, 1914.

1. **BURGLARY INSURANCE: Discovery of Part of Loss: Settlement: Diligence.** A person had a policy of dwelling house burglary insurance. He left home on a summer vacation. On his return he discovered, article at a time, the loss of several of his household effects by a burglar during his absence.

Without looking further, he made out a statement of these losses and was paid by the insurance company and a release receipt given in full settlement of all claim for the burglary. Then a few weeks afterwards, he discovered, from time to time, other losses. No one discovery seemed to cause him to look for more. Finally he presented another claim for these articles and brought suit. The court found as a matter of fact that he had not been diligent in ascertaining his loss and denied his claim. The judgment was affirmed.

2. **DIVIDING ACTION: Diligence.** A party may bring a second action for conversion of a part of a lot of property, if he was ignorant of the conversion at the time he instituted the first action; *provided* he was not wilfully ingorant and had exercised ordinary care to discover his full loss in the first instance.

3. **PART OF A DEBT: Unliquidated demand: Settlement.** The rule that the receipt of a part of a liquidated debt in full of the whole would not bar an action for the balance, does not apply to an unliquidated claim.

4. **NEGLIGENT: Justice.** The law favors the diligent and slumber is not equivalent to innocence in the practical administration of Justice.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn,* Judge.

AFFIRMED.

*B. C. Howard* and *D. H. Cecil* for appellant.

*Yates & Mastin* for respondent.

ELLISON, P. J.—Defendant issued to plaintiff its policy of dwelling house burglary insurance in the sum of one thousand dollars. Plaintiff was absent from his home "on a vacation" from June until September, 1911, though his son occupied the premises, at least to the extent of sleeping there at night. Shortly after plaintiff's return he missed a clock, then afterwards a bottle of wine; then, in a short time, when he wanted to use it, a "Thermos" bottle. Afterwards, during a rain, he missed his umbrellas. These things were

missed, as expressed by plaintiff while testifying, "all one after another."

For them he presented a claim to the defendant and was paid $20.55. He thereupon, executed a release for "burglary or theft committed between the first day of June, 1911, and the 31st of August" which was "in full payment and in compromise settlement of the claim."

He testified that "shorty after," receiving payment of the above mentioned sum, "about the third week in September," he made the first of a series of discoveries of other losses. First was a Thasaurus Dictionary. Then afterwards a silver mug. Then, on the weather getting a little cooler and he needed warmer footwear, he could not find his high top shoes. Then afterwards another dictionary was missed. Then afterwards, about the middle of October, the weather getting still cooler, he sought his heavier clothing and could not find them. Then he looked for other clothing and found various articles had been taken, the total value being $270 for which the present action was brought.

The record does not show more than one burglary. Whatever claim plaintiff had under his policy was for a loss between June 1st and August 31, 1911. The claim for this loss depended for amount on the number of articles and their undetermined value. It was therefore unliquidated. "It is, no doubt, true that the payment by a debtor of a part of his liquidated debt is not a satisfaction of the whole, unless made and accepted upon some new consideration; but it is equally true, that, where the debt is unliquidated and the amount is uncertain, this rule does not apply. In such cases the question is, whether the payment was in fact made and accepted in satisfaction." [Baird v. U. S. 96 U. S. 430.] The rule that a payment of a part of a liquidated debt will not discharge the whole naturally cannot apply to an unliquidated demand; "for

if the claim is unliquidated, it cannot be known, with any certainty, what is the amount really due." [Riggs v. Association, 61 So. Car. 448, 457.] That was said in regard to an unliquidated loss under an open insurance policy, the decision being that if one accepted a less sum than the amount of the policy in satisfaction, he cannot maintain an action for a balance.

In Soper v. Ins. Co., 120 Mass. 267, it was decided that where a settlement was made by parties to marine insurance, of their mutual demands, including items for partial losses, with an agreement that the policy should be cancelled, no action could be maintained for total loss of the vessel, though it had occurred before the settlement, both parties being ignorant of it. And it is stated in 4 Cooleys Insurance Briefs, 3851, that, "If the loss by a fire has been adjusted and the loss paid, according to the terms of the policy, a settlement cannot, in the absence of fraud, afterwards be opened up and the company held further liable because of the omission of certain losses by mistake." We would qualify this by the words, "unless the mistake was unavoidable."

Undoubtedly plaintiff has divided up one single cause of action into two. That is, he has settled for a part and now is suing for the other part. This he, ordinarily, cannot be allowed to do. But his counsel say if one settles for a part, thinking it is the whole and afterwards learns there is more, the rule preventing two actions, or two claims will not apply, and cites Moran v. Plankinton, 64 Mo. 337, from which we quote the following forcible, as well as sound, views: "Now, it is quite obvious, that such prohibition *pre-supposes knowledge* of the constituent elements of the cause of action sought to be unwarrantably divided. If this be true, and it be true also that the law does not require what is impossible, then it must needs follow, that a party should not be precluded in consequence of a former action, if such action were brought in unavoid-

able ignorance of the full extent of the wrongs received or injuries done. Any other conclusion would be reached only through sanctioning the rankest injustice. In Farrington v. Payne, 15 Johns. 432, the question is asked: 'Suppose a trespass, or a conversion of a thousand barrels of flour, would it not be outrageous to allow a separate action for each barrel!' Undoubtedly it would. But in such a case, where the owner is ignorant of the extent of his loss, would it not be far more outrageous to allow a recovery of *one* barrel, to prevent the recovery of the remaining nine hundred and ninety-nine?''

But that vigorous statement of the law is based, of course, on the assumption that the party concerned is not wilfully ignorant of his full claim, and that he has exercised the ordinary diligence of an ordinarily sensible man (if there be opportunity for it) to ascertain his full claim; in this case, his full loss. It cannot be supposed that the courts will permit an insured against burglars to sue for his loss item by item, as he discovers it. Here plaintiff's seeming indifference, apparent lack of interest and certain lack of curiosity, as to the status of his remaining effects after he discovered, piece, by piece, that a part had been taken is most uncommon. He found his clock was gone, then another and another, article was discovered to be lost; not that he began a search for them, but his information only came when some use aroused him to look.

After his first collection of losses, thus discovered from time to time, he had a settlement of all claims under the policy; then cool weather reminded him that he needed heavier shoes, and afterwards as the cold grew sharper he concluded that comfort demanded his winter clothing, and it is only then that he seems to have become sufficiently interested to see just what had happened to his household during his summer's absence. It was in view of this condition of case that

the trial court, there being no jury, gave these declarations:

"The court declares the law to be that, if plaintiff executed the release offered in evidence, in unavoidable ignorance of the extent of his loss, then the finding should be for plaintiff."

"By the term unavoidable ignorance as used in the declarations given herein was meant such ignorance of fact as was occasioned by the failure to exercise ordinary care to ascertain the facts."

And refused this: "The court declares the law to be that, if plaintiff executed the release offered in evidence in ignorance of the extent of his loss, then the finding should be for the plaintiff." Under these instructions the court has found, as a matter of law, that plaintiff had no reasonable excuse for splitting up the demand for his loss.

His negligence, or lack of diligence, may be likened to one who, through want of diligence, fails to discover a right of action which is being fraudulently concealed; the rule in such cases being that he loses his action. [Johnson v. United Railways, 243 Mo. 278; State ex rel. v. Hawkins, 103 Mo. App. 251; Smith v. Settle, 128 Mo. App. 379; Dryer v. Railroad, 170 Mo. App. 550; State ex rel. v. Yates, 231 Mo. 276.] In the latter case it was said (p. 290), "that he who has at his disposal the means of knowing, is held to know; that he who shuts his eyes when to open them and look is to see, is held to see; and that where there is a duty to use diligence those facts which diligence will discover are presumed to be known under the law of notice. One must not go to sleep or rest on his oars where the issue is negligence. He must be up and doing, for the law favors the wakeful and diligent." In Adams v. Gossom, 228 Mo. l. c. 581, it is said that, "The law favors the diligent, and slumber is not equivalent to innocence in the practical administration of justice."

The judgment should be affirmed. All concur.