(No. 22454.—

J. H. SWANN, Appellee, *vs.* THE NATIONAL UNION BENEFIT ASSOCIATION, Appellant.

*Opinion filed June 19, 1934.*

ALBERT E. ISLEY, for appellant.

BASIL BAKER, and KASSERMAN & KASSERMAN, for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:

The appellant issued its benefit certificate or policy of insurance upon the life of Ona Swann, wherein it promised to pay the appellee, as her beneficiary, the sum of $361 upon the death of the insured. The policy contains the following paragraph, the interpretation of which is determinative of this litigation:

"*Chronic Diseases*—In all fairness to the members and in order to guard against the undesirable and physically unfit risks, it is hereby stipulated that: Should the member die within thirty days from the date hereof from heart disease, liver or kidney trouble, Bright's disease, diabetes, cancer, arteriosclerosis, cerebral hemorrhage, pernicious anemia, tuberculosis, or any chronic disease, the maximum benefit hereunder shall be one-fiftieth of the face value of this certificate and shall increase one-fiftieth of the face value each sixty days thereafter during the life of the member, until such chronic benefit reaches the full face value of the certificate in accordance with the conditions relating to death benefit as stipulated on the first page hereof."

Upon a suit brought on the policy in the circuit court of Jasper county that court entered a judgment for the

plaintiff in the sum of $7.22, being one-fiftieth of the face of the policy. On writ of error from the Appellate Court for the Fourth District that judgment was reversed and the cause remanded, with directions to enter a judgment for the full face of the policy. The Appellate Court granted a certificate of importance, and the case is now before us on appeal from that court.

The benefit certificate was issued to the insured on November 23, 1929, and she died about the middle of December, less than thirty days thereafter. The findings and judgment of the Appellate Court are conclusive upon us to the effect that she was in good health at the time of the issuance and delivery of the certificate, but that court made no specific finding as to whether or not the cause of death was myocarditis or any other form of heart disease, as appellant contended. The same contention is urged here, and it is argued that the "chronic-disease" clause set forth above limits appellant's liability to one-fiftieth of the face of the policy, it being argued that such effect follows from the wording of the clause, whether the heart disease was of a chronic or an acute type. The Appellate Court held that such a construction could not be placed upon the paragraph in question, and we are satisfied with the correctness of that conclusion. The entire limitation is in one sentence and it must be considered as a whole, not by separating one word or phrase from another. (*Chicago Home for Girls* v. *Carr,* 300 Ill. 478.) The purpose of the limitation is clearly stated to be, "to guard against the undesirable and physically unfit risks." The words "chronic diseases" are clearly intended to color and dominate the entire paragraph and are determinative of its meaning and proper interpretation. A chronic disease is generally understood to be one of long duration and stubborn resistance to treatment. The Century Dictionary defines the word "chronic" as "continuing a long time; inveterate or of long continuance, as a disease; in pathology, opposed

to acute." The only reason for putting the words "chronic diseases" at the beginning of this paragraph would be to modify, limit and more specifically define the words following, unless we might assume a deliberate intention to deceive or mislead prospective policyholders.

The evidence in this case does not definitely prove the cause of the deceased's death. It indicates a supposition (which the Appellate Court apparently accepted as true) that death was caused by a mild but sudden and acute myocarditis following an attack of influenza. There is no evidence of any kind of chronic heart disease. On the contrary, such proof as there is in the record shows that deceased was in good health and attended to her daily work up to a few days before her death. Providing for just such sudden and unexpected contingencies is one of the reasons for carrying life insurance and paying premiums. To construe this policy in such a way as to defeat its purpose would be to do violence to all of our previous holdings under such circumstances. That there is some ambiguity in this language is demonstrated by the different interpretations placed upon it by the trial court and the Appellate Court. Under such circumstances we will construe the terms of the policy most favorably to the insured, in such a way as to avoid a forfeiture and in the sense in which the insured may have reasonably understood it. *Grand Legion* v. *Beaty,* 224 Ill. 346; *Hartford Fire Ins. Co.* v. *Walsh,* 54 id. 164; *Joseph* v. *New York Life Ins. Co.* 308 id. 93.

The Appellate Court correctly interpreted the terms of this contract, and its judgment is affirmed.

*Judgment affirmed.*