# Ransdell v. North American Accident Ins. Co.

(Decided Nov. 22, 1938.)

508

HENRY S. McGUIRE for appellant.

ALLEN, DUNCAN, & DUNCAN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Mrs. Ruby Ransdell is appealing from a judgment of the Fayette circuit court sustaining a demurrer to and upon her failure to further plead dismissing her petition whereby she sought to recover of appellee $1,000 for the accidental drowning of her husband while bathing in Kentucky River, she being designated beneficiary in an accident insurance policy issued to deceased by appellee.

In sustaining the demurrer the trial judge rendered an opinion found in the record, which so clearly and aptly expresses our views of the case that we adopt as our opinion the pertinent portion thereof which reads:

"The sufficiency of the petition is challenged by demurrer, and it is the contention of defendant that the petition does not properly plead the provisions of the policy relied upon, and does not state a cause of action. Passing that objection we will proceed to the more serious contention of the defendant in-

surance company to the effect that the policy on which the action is brought did not insure plaintiff's husband against death by accidental drowning while bathing or swimming in the Kentucky River, or any other river. In order to determine this all-important question it is necessary to resort to the terms of the policy itself, which provides as follows:

" 'North American Accident Insurance Company, Chicago, Ill. (A stock company and hereinafter called the Company) Does Hereby Insure Clarence Ransdell, age 34, from May 4th, 1936, 12:00 o'clock Noon, Central Standard Time subject to the provisions and limitations herein contained, against the effects of Bodily Injuries caused directly, solely, and independently of all other causes, by External, Violent, and Accidental Means which shall from the date of accident result in continuous disability in the manner and to the extent hereinafter provided. Indemnity for loss of life as hereinafter provided shall be payable to Mrs. Ruby Ransdell, Wife of the Insured.

" 'Part 1.

" 'Indemnity for Death, Dismemberment or loss of sight. (Here follow certain benefits to be paid for loss of life, hands, eyes, or feet, and need not be set out in this opinion).'

"Following these benefits, however, is the following important provision:

" 'If the insured shall suffer any of the specific losses set forth in Part 1, the Company shall pay the sum set opposite such Specific Loss provided such loss shall result within thirty days from the date of accident and only if such injuries are sustained as follows: (a) By the wrecking of a private automobile of the exclusively pleasure type, that is lawfully registered and licensed, in which the Insured is riding or driving; provided that the insured is not operating such automobile while carrying passengers for hire or transporting merchandise for business purpose; or

" '(b) By being struck, knocked down or run over while walking or standing on a public highway by a moving vehicle propelled by steam, cable, electricity, naptha, gasoline, compressed air, or liquid

power, (excluding injuries sustained while working on a public highway or railroad right-of-way and also excluding injuries sustained while on a railroad right-of-way except an established crossing; or

" '(c) By the wrecking of a taxicab, jitney, public automobile or automobile stage, which is being driven or operated at the time of such wrecking by a licensed driver plying for public hire, and in which the Insured is traveling as a fare-paying passenger.'

"From the above provisions it will be observed that there is no specific mention whatever of accidental drowning while swimming or bathing, but the policy specifically provides that the defendant shall be liable only for such injuries 'caused directly, solely, independently of all other causes, by *External, Violent and Accidental Means,* which shall from the date of accident result in continuous disability *in the manner and to the extent hereinafter* provided.' (Italics by the Court.)

"In addition, as will be seen from the above quotation from the policy, supra, it also provided that the company would pay the sums set forth in Part I, 'only if such injuries are sustained as follows:'

"The type of injuries enumerated as will be seen in (a), (b) and (c) above, make no mention of or reference to swimming or bathing, and are expressly limited to those specifically set forth.

"On the second Page of said policy under the title 'General Provisions,' are to be found the following terms:

" '1. The loss of any member or members specified herein shall mean the loss by actual and complete severance at or above the wrist or ankle; loss of eye or eyes shall mean the irrecoverable loss of the entire sight thereof.

" '2. The insurance hereunder does not cover (a) suicide or self-inflicted injury or any attempt thereat, while sane or insane; (b) any injury which results in hernia; (c) injuries fatal or non-fatal, of which there shall be no visible contusion, wound or other marks or evidence of injury on the exterior of

the body at the place of injury (accidental drowning excepted), the body itself in case of death not to be deemed such; or death disability or loss resulting directly or indirectly from injury sustained; (d) while engaged in military or naval service; (e) while riding in or on a motorcycle, aircraft or submarine craft of any description; (f) while riding or driving in races or while testing any automotive vehicle on tracks, speedways or proving grounds; (g) while outside the territorial limits of the Continental United States of America or the Dominion of Canada; (h) while on duty as a railroad employee, a paid or volunteer fireman or a law enforcement officer, (i) or a paid automobile mechanic or repairman while engaged in his duties as such; (j) while unconscious or under the influence of or affected by narcotics or alcohol; (k) while doing any act in violation of law; (1) while blind or insane; nor does it cover death, disability or loss caused or contributed to directly or indirectly by carbon monoxide, or any pre-existing diseases, infirmity, deformity, or physical impairment, or medical or surgical treatment therefor.'

"It is the exception (c) in paragraph 2 above on which plaintiff is relying for recovery in this action, said provision being as follows: 'Injuries fatal or non-fatal, of which there shall be no visible contusion, wound or other marks or evidence of injury on the exterior of the body at the place of injury (accidental drowning excepted) the body itself in case of death not to be deemed such.'

"In other words, it is the contention of plaintiff that this exception extends the provisions of the policy to include accidental drowning while bathing or swimming in the Kentucky River. Provisions of that type are not unusual in this type of policy.

" 'A very usual provision in accident insurance policies is that the insurer shall not be liable unless there is some external or visible sign or mark of the injuries, or the injury shall leave a visible mark on the body, or some other language of similar import, in which case no recovery can be had, where the requirement is not met. Such a provision does not require that an external or visible sign of the

injury shall become apparent immediately, after the happening of the accident, and conversely if there were visible marks of the injury when the accident happened, a recovery for death is not precluded by the fact that such marks became obliterated before death occurred.' " 1 C. J. page 433, Section 79:

"It is also a well-settled rule in this as well as in most other jurisdictions that a policy of accident insurance is to be liberally construed as against the insured although strictly construed against the insurer, and also where there is any ambiguity in the policy, the rule is that all provisions, conditions or exceptions which in any way tend to work a forfeiture of the policy, or limit or defeat liability thereunder, should be construed more strongly against those for whose benefit they are asserted, and more favorably toward those against whom they are meant to operate, and the court should adopt the construction most favorable to the insured when a doubt arises in respect to exceptions to or limitations of liability or clauses creating a forfeiture. 1 C. J. page 414, Section 38.

"It is also the law, as stated by the Court in Hawkeye Commercial Men's Association v. Christy, 8 Cir., 294 F. 208, 213, 40 A. L. R. 46, that 'Parties to insurance contracts have the right and power to contract for what accidents and risks the company shall and for what accidents and risks they shall not be liable and the courts may not make new or different contracts for them.'

"With these few general declarations of the rules of law governing this type of insurance, let us examine this policy as a whole. In the first place, as will be seen by one of the exhibits herein, the said policy was obtained through the Cincinnati Automobile Club as a part of the service offered by that club, and the premium was included in the annual dues of club membership in the sum of $7.75, in the Cincinnati Automobile Club. The said $7.75 also included $1 for a years' subscription to 'Motour,' so it can be seen that this was what might be called a 'cheap policy.' On the face of said policy at the top of the page in bold letters will be found the following warning: 'This Policy Provides Indemnity for Loss of Life, Limb, Sight or Time by

Accidental Means, as Herein Limited and Provided.'

"There is also, printed in red letters across the face of the policy the following: 'This is a limited policy. Read carefully.'

"As above stated the liability of the Company is specifically limited to injuries sustained as set forth in (a), (b) and (c) of the policy, supra, the only mention of accidental drowning being under 'General Provisions' and then it is only mentioned as a type of death not requiring evidence or marks of contusion or external injury. It is quite possible that the decedent might have, while riding in his own motor vehicle or public conveyance, collided with another car and plunged into a river or stream, resulting in his accidental drowning, which would in all probability leave no visible wounds or contusions on his body. However, such death would entitle the beneficiary to recover under Part I of the policy by reason of the fact that the aforesaid exception would remove the necessity of offering in evidence wounds or contusions on the body—the drowning while a passenger in a motor vehicle being sufficient.

"Apparently the Court of Appeals for the Eighth Circuit (Commonwealth Casualty Company v. Aichner, 18 F. (2d) 879) took the same view of a policy very similar to the one now before the Court. The Court said [page 882]:

" 'A careful reading of the policy and analysis of its terms convince us that such criticism is not justified. Upon the face of the policy it appears prominently displayed in large type that it is but a "Ten Dollar" or cheap policy; that it pays limited indemnity for loss of life, personal injuries, loss of time by accidental means, and sickness, to the extent therein provided. Section A pays for loss of life the large amount of $5,000 during the first year, and $7,500 after the fifth year for one form of injury; that is to say, while traveling as a passenger in a common carrier's public passenger conveyance, and then only when such injuries are sustained because of wrecking of such conveyance. It pays proportionate amounts for major personal injuries due to the same cause. Section B pays $50 per week

for loss of time due to the same cause.  Section C pays $25 per week for loss of time for injuries resulting from other causes.  Section F makes it clear that the provisions of section A do not apply to death from all causes by providing an indemnity of $100 for loss of life in any accident "not otherwise covered by this policy."

" 'Clause 11 of section J provides that the policy does not cover "injuries fatal or non-fatal, *except drowning, of which there shall be visible mark or contusion on exterior of the body at the place of injury, the body itself in case of death not to be deemed such." This plainly does not enlarge liability for drowning as a specific cause of death. It merely excludes it from those injuries which require a visible mark on the exterior of the body as evidence of the cause of death, because drowning would naturally not leave such a mark.* This, in our judgment, is the only significance of this section and clause of the policy.  The words "while traveling" which introduce the clause of limitation to loss of life sustained by reason of the wrecking of a common carrier's public passenger conveyance, are in large type, calculated to catch the eye, and the clause is placed precisely where it should be to modify the language which precedes it.  The language of that section, if read without too scrupulous regard for punctuation, is clear and unambiguous.  The various sections of the policy are clearly separate and distinct.  In addition to the indemnities provided for loss of life and serious personal injuries, many benefits for loss of time, for hospital benefits and surgeon's fees, and for sickness are provided.  Altogether, the policy cannot be regarded as illiberal for the small premium paid.  But, be that as it may, as said in Hawkeye Commercial Men's Association v. Christy, supra, the parties had "the right and power to contract for what accidents and risks the company shall and for what accidents and risks they shall not be liable, and the courts may not make new or different contracts for them."

" 'This policy, throughout, upon its face, and we have nothing else to go by, calls attention sharply to the fact that it pays limited indemnity under varying conditions, clearly and distinctly specified.

We feel that the average reader would have no difficulty in arriving at its meaning, if read with the ordinary care which the law requires. Upon this subject Mr. Greenleaf, (volume 1, par. 298) makes this observation: "Words cannot be said to be ambiguous because they are unintelligible to a man who cannot read; nor is a written instrument ambiguous or uncertain merely because an ignorant or uninformed person may be unable to interpret it. It is ambiguous only when found to be of uncertain meaning by persons of competent skill and information." '

"We are not entirely without precedent in the State of Kentucky. The case of Inter-Southern Life Insurance Company v. Foster, 248 Ky. 481, 58 S. W. (2d) 668, held that where accident policies cover injuries sustained in a specific manner, the accident must be within the stipulation to recover thereupon. The Court said: 'A complement of the fundamental canon of construction that a policy of insurance will be interpreted liberally in favor of the insured when there is any degree of ambiguity is the manifest rule that where the policy provides for indemnity for a loss which is the result of an injury sustained in a specified manner, the accident must be brought within the stipulation in order to recover. Walther v. Southern Surety Company, 187 Ky. 466, 219 S. W. 183. Especially should this be so where the premium is small ($1.25), and the policy is a very limited one and does not pretend to be full coverage. As an actuarial proposition, the insurance must necessarily be circumscribed and must have been so understood by the person insured. * * *'

"From the foregoing it is quite evident that there not only is no ambiguity in the contract relied upon, but it is also quite evident that there is no provision in the policy imposing liability on the defendant company for the death of deceased as a result of accidental drowning while bathing or swimming in the Kentucky River."

Judgment affirmed.