Nickols LOULOS, Appellant,

v.

UNITED SECURITY INSURANCE COMPANY, Respondent.

No. 23301.

Kansas City Court of Appeals.
Missouri.

Oct. 2, 1961.

Homer A. Cope, Donald W. Browne and Walter A. Raymond, Kansas City, for appellant.

Richard P. Sprinkle, Sprinkle, Carter, Sprinkle & Larson, Kansas City, for respondent.

BROADDUS, Judge.

This is an action upon a contract of insurance covering loss or damage to an automobile. Upon a trial to a jury a verdict was returned for plaintiff for damages to his car in the sum of $843.64, with interest in the amount of $114.78, a penalty of $84.-36 and an attorney's fee of $1,000. Upon motion for new trial by defendant the court held that the evidence did not justify the submission of penalties and attorney's fees, and ordered a remittitur of the attorney's fees and penalty. Upon plaintiff refusing to remit in accordance with such order the court granted defendant a new trial. Plaintiff has appealed from such order.

The facts are briefly as follows: On October 26, 1957, plaintiff bought a used Ford automobile for which he paid $1,450. That evening plaintiff met defendant's agent, E. G. Paul, at the motel of his father-in-law, Edward Thornton, and applied for a full coverage policy on his automobile. Paul filled out the policy application for six months' insurance in triplicate, which plaintiff signed. Plaintiff paid $20 cash on the premium and his father-in-law offered to pay the balance of the premium for six months which in all amounted to $67, or an additional $47. Defendant's agent Paul said it was not necessary that all the premium be paid at that time and agreed to wait for the balance of the premium until plaintiff's next pay day, a week or ten days later. That was a customary procedure. Plaintiff was given a copy of the application. The original application, together with the agency check for the entire six months' premium was mailed to defendant company by its agent Paul. Paul signed a fifteen day binder as agent of defendant and advised plaintiff the insurance was effective immediately. The exact language of the "binder" clause is: "Any insurance bound is limited to a period of 15 days from its effective date and expires on the last day of such limited period." Plaintiff on the next pay day gave $47 to his father-in-law who in turn delivered said sum to defendant's agent Paul on November 8, 1957, in

payment of the balance of the six months' premium due on the policy. At that time the policy had not arrived from the company for delivery to plaintiff, but its agent had received no notice of rejection of plaintiff and assured paintiff that he was covered. Just after receiving the balance of the premium on November 8, Paul's wife, who worked with him, called defendant's home office about plaintiff's policy and was informed that the application and check had not been received. Paul then called defendant's casualty department and was informed that it would be all right for him to forward his copy of plaintiff's application with a new agency check for the premium. Paul stopped payment on the original premium check and forwarded his copy of the application and new check for payment of a six months' premium. As the policy did not come plaintiff's father-in-law called Paul and inquired about the policy and was assured by Paul that he would take care of everything.

On December 14, 1957, plaintiff had an accident in which his car was overturned and was badly damaged. Plaintiff notified defendant's agent Paul that night. The next day Paul notified defendant's claim department of plaintiff's accident and the damage to his car.

On December 10, 1957, Paul received a telephone call from a Mr. Phillips in defendant's office advising that defendant could not accept plaintiff's application because he was under 25 years of age. On December 12, Paul received a letter from defendant to like effect. At the time of receiving said messages Paul was very busy and had a plane reservation to go to Chicago. As a result Paul did not notify plaintiff of defendant's position until he returned from his trip and until after plaintiff's accident.

On December 16, 1957, Paul undertook to return the premium to plaintiff. Plaintiff was present when the tender was made but plaintiff's father-in-law, Thornton, who had been handling the entire matter, re-

jected the offer, saying, "we don't want the premium."

Although defendant denied that plaintiff was insured, it had an appraisal made of plaintiff's wrecked automobile. This was done on January 19, 1958.

 From the above facts it is clear that defendant's motion for a directed verdict was properly overruled. Was the trial court also correct in holding that it committed error in submitting the question of vexatious delay to the jury? Section 375.-420, V.A.M.S., which provides for penalties in the event of vexatious refusal by an insurer to pay a claim is highly penal and must be strictly construed. Scott v. Missouri Ins. Co., Mo.App., 246 S.W.2d 349, 355.

In the leading case of Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, 422, 210 S.W. 37, 43, it is said: "The defendant is to be allowed to entertain an honest difference of opinion as to its *liability, or as to the extent of such liability* under the contract of insurance, *and to litigate that difference*." (Emphasis supplied.) The court then quoted with approval from the much cited case of Patterson v. American Ins. Co., 174 Mo.App. 37, 44, 160 S.W. 59, 62, that "the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to be to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention is no reason for inflicting the penalty." In other words, the defendant "has the right * * * to defend a suit with all the weapons at its command so long as it has reasonable ground to believe its defense is meritorious." Suburban Service Bus Co. v. National Mut. Casualty Co., 237 Mo.App. 1128, 183 S.W.2d 376, 378.

With the above well-settled rules in mind, we turn to the facts of the instant

case. The Ford automobile involved in the accident was a "used car". Plaintiff had purchased it for the sum of $1,450. At the time of the accident it had been driven 40,650 miles. Plaintiff testified that he paid $700 to have the car repaired. He later traded it for a "1953 Packard" and "was allowed as the trade-in-value of the 1956 Ford around $900." Defendant produced an expert witness who testified that the cost of completely repairing the Ford car on account of the damage done to it by reason of the accident would be $915.64.

Thus it clearly appears that the defendant had reasonable grounds to believe that the *extent* of plaintiff's loss was not nearly as great as he claimed in his petition, to-wit: $1,960. That defendant's belief was well grounded finds additional support in the jury's verdict assessing plaintiff's actual damage at only $843.64.

The order granting defendant a new trial is affirmed. All concur.