**Nelda V. IRELAN, Plaintiff-Respondent,**

**v.**

**STANDARD MUTUAL ASSOCIATION OF CASSVILLE, Missouri, a corporation, Defendant-Appellant.**

No. 8264.

Springfield Court of Appeals. Missouri.

May 28, 1964.

Joe R. Ellis, Royle Ellis, Cassville, for defendant-appellant.

Myers & Birk, Joplin, for plaintiff-respondent.

RUARK, Presiding Judge.

Plaintiff sued on a life insurance certificate which provided a death benefit of five hundred dollars. Trial was by the court.

Plaintiff recovered judgment, and defendant has appealed.

The contract provided that "within Three Months from the date of the receipt of approved Proof of Death of the Certificate Holder herein named, it will pay IN CASH to the Beneficiary herein named, the benefits shown herein except as provided below.

### "GRADUATED BENEFITS

"It is understood and agreed that the Benefits provided in this Certificate shall graduate in amount as follows: 10% if death occurs within the first month, 25% if death occurs within the second month, and 50% if death occurs within the third month (after the date of the Certificate).

"In the event of the death of the Member named herein, within two years from the date hereof from TUBERCULOSIS, CANCER, HEART DISEASE, or APOPLEXY, or from any chronic disease with which said Member is afflicted AT THE TIME THIS CERTIFICATE IS ISSUED, either as a direct or contributory cause, then the amount due and payable hereunder shall be limited to One-Half the amount otherwise due and payable, provided however, that if any material representations in the application are untrue then the entire Certificate shall become null and void, except as to the return of assessments paid thereon. * * *"

The certificate was issued on April 8, 1960. The insured died on March 19, 1962, and thus within two years. The death certificate listed "IMMEDIATE CAUSE * * * Coronary occlusion INTERVAL BETWEEN ONSET AND DEATH 8 hours." Plaintiff's proof of death listed as "CAUSE OF DEATH Coronary occlusion." There is no dispute as to cause of death. The widow beneficiary testified that the insured had no heart trouble or heart disease prior to the day of his death; and the defendant-appellant did not and does not contend that insured suffered from heart disease at the time the policy was issued.

Appellant contended below and here contends that under the limiting clause above set forth it owes only one-half the death benefit, or two hundred fifty dollars, which it tendered. Respondent contends, as the trial court found, that the full benefit of five hundred dollars was payable.

The first question we have is raised by the respondent: Is death caused by a coronary occlusion, death by "heart disease"? At trial defendant's witness Dr. Newman testified unqualifiedly that a coronary occlusion is a heart disease. Her statement was that heart disease is "any abnormal pathology affecting the heart." On cross-examination she testified in elaboration that if an "artery into the heart was cut in such a manner that the blood supply to the heart was cut off" death would result from "heart disease." Further in her examination she qualified her definition to some extent by saying that there is "some difference between disease and what can happen as an injury." She concluded by stating that a person with a perfectly healthy heart cannot die of a coronary occlusion; that a coronary occlusion is a stopping of a coronary artery. It was stipulated that another physician, if present, would testify that coronary occlusion is a heart disease.

The general rule is that in construing an insurance policy, if there is a conflict between a technical medical definition and a meaning which would normally be accepted by the average layman, then unless it plainly appears that the technical meaning is intended, the courts will accept and apply the layman's viewpoint. 27 C.J.S. Disease, pp. 302, 303; Robinson v. Commonwealth Casualty Co., 224 Mo.App. 969, 27 S.W.2d 49, 51; Farmer v. Railway Mail Ass'n, 227 Mo.App. 1082, 57 S.W.2d 744, 745. For the test of understanding is that "revealed in the common speech of men." State ex rel. Prudential Ins. Co. of America v. Shain, 344 Mo. 623, 127 S.W.2d 675, 678;

**818**

Feldmann v. Connecticut Mut. Life Ins. Co. of Hartford, Conn., 8th Cir., 142 F.2d 628, 631.

Turning then to the common understanding: We find that the definitions of "disease" are quite broad. Brinkoetter v. Pyramid Life Ins. Co., Mo.App., 377 S.W.2d 560. Referring to the dictionaries we find many specific definitions but one general throughout, to wit: disease is a condition of the body or some part or organ in which the functions are disturbed or deranged. This is usually followed by a more definitive declaration that the derangement is understood to be of settled duration and one which is due to causes as distinguished from a wound.[1]

■ In Frank v. Atlanta Life Ins. Co., Mo.App., 211 S.W.2d 940, 942, it is said that "heart failure" or "cardiac failure" is commonly accepted as describing death by heart trouble or disease. An occlusion is a shutting off, or the closing or obstruction, of a passage. (See dictionary definition.) Anatomically the coronary arteries are a part of the heart, and any pathology within the coronary arteries is an injury to the heart and, therefore, "heart trouble." Frank v. United Ben. Life Ins. Co., Mo.App., 231 S. W.2d 234, 239. It is our conclusion that, by the understanding of average man, a death by coronary occlusion is death by "heart disease"; and we rule against the respondent as to this contention.

■ The principal argument is over the construction of the limiting and qualifying clauses first above set forth. Appellant says that the meaning is plain that, if the insured died from heart disease within two years after issuance of certificate, then the benefit was to be one-half. Respondent contends that it plainly means and should be read so that "heart disease" (and the other named causes) is to be taken along with the words "any chronic disease" and governed by the following words, "with which said Member is afflicted AT THE TIME THIS CERTIFICATE IS ISSUED." In other words, the affliction at the time the certificate is issued relates back to all the diseases set forth in capital letters, and the *sense* of the meaning is as though the word "other" was inserted before the word "chronic." It is the view of the writer (not however concurred in unanimously by the other members of the court) that, by giving effect to the word "or" in front of the word "APOPLEXY" and to the comma after such word, the policy is to be construed as the insurer-appellant contends. But that does not solve our problem. An insurance policy is not necessarily to be construed in the manner of a (hopefully) painstaking lawyer, sitting at his desk and attempting to apply all the proper rules of punctuation and grammatical niceties. We must consider the meaning which would reasonably be attached by the ordinary person of average intelligence or common understanding. Crenshaw v. United States Fidelity & Guaranty Co., Mo.App., 193 S.W. 2d 343, 344; Liberty Storage Co. v. Kansas City Terminal Warehouse Co., Mo.App., 340 S.W.2d 189[4]. It has been said that punctuation is "a most fallible guide" and that "[t]he sense of a contract is gathered from its words and their relation to each other, and, after that has been done, punctuation may be used to more readily point out the division in the sentences and parts of sentences. But the words control the punctuation marks, and not the punctuation marks the words." See discussion in Commonwealth Casualty Co. v. Aichner, 8th Cir., 18 F.2d 879, 881.

■■ We must, of course, read the policy as a whole and consider all of its portions together. Appleman, Insurance Law and Practice, Vol. 13, §§ 7383, 7425, pp. 10, 125; State ex rel. Mutual Ben. Health & Accident Ass'n v. Shain, 350 Mo. 422, 166

1. See Shorter Oxford English Dictionary; Webster's New International Dictionary, 2d ed.; Webster's Dictionary of Synonyms; 27 C.J.S. Disease, p. 302, et seq.; 12A Words and Phrases, "Disease," p. 389.

S.W.2d 484, 487. It should be interpreted according to its plain terms, and if the language is plain there is not room for construction. We cannot, under the guise of construction, alter, rewrite, or modify a policy so as to pervert its meaning by adopting a strained construction (Pierce v. Business Men's Assur. Co. of America, Mo., 333 S.W.2d 97, 100; Ward v. Gregory, Mo.App., 305 S.W.2d 499, 503; Winston v. Hartford Fire Ins. Co., Mo.App., 317 S.W.2d 23) or *invent* an ambiguity. Central Sur. & Ins. Corp. v. New Amsterdam Cas. Co., 359 Mo. 430, 222 S.W.2d 76, 78; Glenn v. Missouri Ins. Co., 238 Mo.App. 236, 179 S.W.2d 644, 646. But if the policy is in fact reasonably susceptible of being understood in two or more senses or is "dulled by ambiguity," then it will be construed most strongly against the insurer. In other words, we will take that meaning which favors the insured. Simpson v. American Auto. Ins. Co., Mo. App., 327 S.W.2d 519[2]; Chamberlain v. Mutual Ben. Health & Acc. Ass'n, Mo.App., 260 S.W.2d 790[6]; Walker, to Use of Foristel, v. American Automobile Ins. Co., 229 Mo.App. 1202, 70 S.W.2d 82, 89.

■ This rule is especially applicable where insurance is first "granted" and is then followed by provisions limiting or avoiding liability. Such limiting provisions are strictly construed against the insurer.[2] It is said that if the insurer intends to place limitations upon the liability it is required to set these limitations forth clearly, definitely, and explicitly (Appleman, Vol. 13, § 7403, p. 97; Schmohl v. Travelers' Ins. Co., Mo.App., 189 S.W. 597, 600, aff. Mo., 197 S.W. 60; see Chamberlain v. Mutual Ben. Health & Acc. Ass'n, supra), for ambiguous phrases are not to be permitted to serve as traps for policyholders. Davis v.

Mutual Life Ins. Co., 234 Mo.App. 748, 119 S.W.2d 488; see Boillot v. Income Guaranty Co., 231 Mo.App. 531, 102 S.W.2d 132, 145. And if the meaning of the limiting language is the least doubtful, it will be taken against the insurer (Souders v. Commonwealth Casualty Co., Mo.App., 246 S.W. 613), even though the insurer actually intended otherwise. State ex rel. Security Mut. Life Ins. Co. v. Allen, 305 Mo. 607, 267 S.W. 379.

■ Referring again to the certificate: It first stated that the benefit was five hundred dollars and provided that such would be paid within three months after proof of death. The next clause provided that the benefit would be paid in graduated amounts, ranging from ten per cent if death occurs within one month to fifty per cent if death occurs within the third month. Then followed the limiting (reducing) clause in dispute. The ordinary person, having read the graduated benefits in the second clause and having the eyes attracted by the bold faced type **TUBERCULOSIS, CANCER, HEART DISEASE or APOPLEXY** * * * **AT THE TIME THIS CERTIFICATE IS ISSUED** in the next clause, might be less inclined to examine the punctuation of that limiting clause and assume that, the amount having already been graduated to one-half the benefit if death occurred within three months, the limitation on heart disease was applicable to that suffered at the time the certificate was issued. We note that in Commonwealth Casualty Co. v. Aichner, supra (followed in Ransdell v. North American Accident Ins. Co., 275 Ky. 507, 122 S. W.2d 114), attention was paid to the fact that certain words were printed in large type as an aid in sustaining the insurer's contention that the policy was not ambiguous. If this aid to construction is to be

2. Rieger v. Mutual Life Ins. Co. of New York, 234 Mo.App. 93, 110 S.W.2d 878 [7]; Thrower v. Life & Casualty Ins. Co. of Tennessee, Mo.App., 141 S.W.2d 192, 196; Kimbrough v. National Protective Ins. Ass'n, 225 Mo.App. 913, 35 S.W.2d 654 [8]; Koch v. Menaugh, 231 Mo.App. 1036, 84 S.W.2d 383 [2]; Bonzon v.

Metropolitan Life Ins. Co., Mo.App., 143 S.W.2d 336 [4]; Bituminous Casualty Corporation v. Walsh & Wells, Mo.App., 170 S.W.2d 117 [3]; Ransom v. Potomac Ins. Co. of District of Columbia, 226 Mo. App. 664, 45 S.W.2d 95, 98; Caine v. Physicians' Indemnity Co. of America, Mo.App., 45 S.W.2d 904, 908.

applied in favor of the insurer, it should work in both directions. We conclude that the policy when taken as a whole was reasonably susceptible of different interpretations. We are therefore required to accept that most favorable to the plaintiff and hold that the limitation is to be construed as applicable to heart disease suffered at the time the certificate was issued.

The judgment of the trial court was for the (full) amount of five hundred dollars, "with interest on $250.00 from June 19, 1962, with ten per cent penalty on $250.00 or in amount of $25.00 and attorney fee in amount of $150.00."

■ The facts are that on June 9, 1962, the insurer tendered the widow beneficiary a check for two hundred fifty dollars. The words on the check were: "THIS CHECK IS IN PAYMENT OF ITEMS AS PER STATEMENT FOLLOWING. ENDORSEMENT OF PAYEE WILL CONSTITUTE A RECEIPT IN FULL WHEN CHECK IS PAID Claim #114, Cert #55622 Daris L. Irelan ½ benefit $250.00." It could well be argued that this was an unconditional tender; but the parties construed it as calling for an unconditional release. The defendant pleaded that it had tendered (and plaintiff had refused) the sum of two hundred fifty dollars as "the amount due upon said Certificate." The offer was renewed, but "as full payment of the amount due in accordance with the terms and conditions of the Certificate of Membership, and does now tender said sum into this court." We think we must accept the construction the parties put on the offer and treat it as a conditional tender calling for release of plaintiff's claim for the full amount.

■ We have no doubt that defendant was *not* guilty of vexatious refusal (§ 375.420 RSMo, V.A.M.S.) in seeking determination of its obligation in respect to the full five hundred dollars. The insurer has the right without penalty, if in good faith, to litigate a question of fact or an open question of law concerning which there is reasonable or probable cause for belief; and, if the dispute is bona fide, liability for the penalty cannot be deduced from the mere fact plaintiff got a verdict.[3] This applies to questions involving construction of the policy. Schaeffer v. Northern Assur. Co., Mo.App., 179 S.W.2d 923; Fletcher v. Metropolitan Life Ins. Co., Mo. App., 137 S.W.2d 621. Considering the difficulty which *we* have had in determining the construction to be applied, we think the insurer was entirely justified in standing upon its interpretation and litigating the question. It should not be charged with vexatious refusal on such account.

■ But we have more difficulty with the failure to pay, without strings, the two hundred fifty dollars which it *admittedly* owed. It may be true that the beneficiary could have cashed the check and defeated a claim of accord and satisfaction or release on the ground of no consideration;[4] but it has been held that this fact is not available to the insurer on a claim for the statutory "penalty." Burneson v. Massachusetts Bonding & Ins. Co., Mo.App., 205 S.W.2d 239 [6]. We think we must treat the offer as no tender.

■ Where there is a bona fide dispute, based on reasonable belief, the insurer is not required to pay, or offer to pay, a portion of an excessive, unliquidated claim.

3. 46 C.J.S. Insurance § 1406a, p. 719; Couch, Cyclopedia of Insurance Law, Vol. 7, § 1866, p. 6198; Dixon v. Business Men's Assur. Co. of America, 365 Mo. 580, 285 S.W.2d 619 [10]; Jones v. Atlanta Life Ins. Co., Mo.App., 289 S.W.2d 438; Jones v. Farm Bureau Mut. Ins. Co., Mo.App., 284 S.W.2d 11, 16; Young v. New York Life Ins. Co., Mo.App., 221 S.W.2d 843, aff. 360 Mo. 460, 228 S.W. 2d 670.

4. Couch, Vol. 7, § 1867, p. 6211; Brady v. New Jersey Fidelity Ins. Co., 180 Mo. App. 214, 167 S.W. 1171; Stricker v. Metropolitan Life Ins. Co., Mo.App., 237 S.W. 894; see West's Missouri Digest, Accord and Satisfaction, ■

46 C.J.S. Insurance § 1408, p. 725; Glover v. Liverpool & London & Globe Ins. Co., 193 Mo.App. 489, 186 S.W. 583; Chernus v. Kennedy-Coats Const. Co., 227 Mo.App. 582, 55 S.W.2d 744, cert. quashed State ex rel. Union Indemnity Co. v. Shain, 334 Mo. 153, 66 S.W.2d 102. It is stated generally that there can be no vexatious refusal where the plaintiff seeks a recovery for more than he is entitled (Loulos v. United Sec. Ins. Co., Mo.App., 350 S.W.2d 87; Cross v. Peerless Ins. Co., Mo.App., 351 S.W.2d 826, and cases at 829), at least when the admitted portion is insignificant in comparison with the total amount which is wrongfully claimed. (See Boenzle v. United States Fidelity & Guaranty Co., Mo. App., 258 S.W.2d 938; Brown v. Mutual Life Ins. Co. of New York, Mo.App., 140 S.W.2d 91.) But if the dispute is as to both the amount due and the liability under the policy, the fact that the plaintiff recovered less than that sued for does not exclude vexatious recovery. Wood v. General Ins. Co. of America, 229 Mo.App. 296, 77 S.W.2d 167 [9]. It is also said that where it is undisputed that a certain amount is due, but the insurer's liability for a sum in excess thereof is disputed, payment of the conceded amount is obligatory. Appleman, Vol. 3, § 1691, p. 281. And, if there are separable or distinct items and there is no reasonable basis for the refusal of payment of one, the insurer will be charged with the vexatious penalty for failure to pay that portion of the benefits even though it may have good cause for disputing the other. Burneson v. Massachusetts Bonding & Ins. Co., supra; Block v. United States Fidelity & Guaranty Co. of Baltimore, Md., 316 Mo. 278, 290 S.W. 429.

 Each case under the vexatious penalty statute must be decided on its own facts. Jones v. Reeves, Mo.App., 41 S.W.2d 605. The case we have here is somewhere between the instances above mentioned. There is only one claim and one item, but there are two different amounts involved, depending upon which interpretation is cor-

rect. These amounts are "liquidated" in the sense that the figure for each is fixed. The insurer has never denied the death or the cause of death but has consistently admitted that two hundred fifty dollars (and no more) was due on account of said death. Litigation might determine liability for the additional two hundred fifty dollars, but it would not reduce the amount of the two hundred fifty dollars concerning which there was no dispute. The insurer was obligated for this sum regardless of the outcome of any dispute or the litigation on the remaining two hundred fifty dollars, and there was no "bona fide dispute" as to the first amount. In this situation we believe that there was no reasonable cause to withhold payment of such admitted sum, or to make its payment conditioned upon the release of the disputed amount. Payment of the admitted sum would not have inhibited a good faith defense on the real question involved.

The judgment is affirmed.

HOGAN, J., concurs in separate opinion.

STONE, J., dissents in separate opinion.

HOGAN, Judge (concurring).

I concur, although I am bound to say that were the case to be resolved wholly and solely upon my personal judgment, I would accept the finding of ambiguity with some reserve. With deference to the opinion of others, I would construe the "Graduated Benefits" provision flatly against the insurer, upon the record presented. I believe that the phrase "or from any chronic disease" qualifies the meaning of the words "TUBERCULOSIS, CANCER, HEART DISEASE, OR APOPLEXY," so that the fair intendment of the "Graduated Benefits" provision is to reduce payment only to those who were afflicted with some chronic form of the diseases mentioned at the time the risk attached. The Supreme Court of Illinois came to a similar conclusion in Swann

v. National Union Ben. Ass'n, 357 Ill. 78, 191 N.E. 224, 225 [1–3], in a similar situation, and I would adopt the reasoning applied there.

STONE, Judge (dissenting).

I agree with the author of the principal opinion that the language of the insurance certificate "is to be construed" as having the meaning upon which defendant-appellant stands, but I cannot agree that such language is *reasonably or fairly* susceptible of a different meaning.

The language, on the construction of which the case turns, is: "In the event of the death of the Member named herein, within two years from the date hereof from TUBERCULOSIS, CANCER, HEART DISEASE, or APOPLEXY, or from any chronic disease with which said Member is afflicted AT THE TIME THIS CERTIFICATE IS ISSUED," the death benefit shall be one-half of that otherwise payable. The construction for which plaintiff-beneficiary contends (hereinafter referred to as plaintiff's construction) is that the clause "with which said Member is afflicted AT THE TIME THIS CERTIFICATE IS ISSUED" relates back to, and thus modifies, not only "any chronic disease" but also "TUBERCULOSIS, CANCER, HEART DISEASE, or APOPLEXY," and that (in the words of the principal opinion) "the *sense* of the meaning is as though the word 'other' was inserted before the word 'chronic.'" Defendant-insurer asserts that the quoted language is plain and unambiguous and that its meaning (hereinafter referred to as defendant's construction) is as if the *parallel modifiers* of the opening language (i. e., of "[i]n the event of the death of the Member named herein, within two years from the date hereof") had been numbered thusly: "(1) *from* TUBERCULOSIS, CANCER, HEART DISEASE, or APOPLEXY, *or* (2) *from* any chronic disease with which said Member is afflicted AT THE TIME THIS CERTIFICATE IS ISSUED." (All emphasis herein is mine.)

The basic rules to be followed in construction of this certificate are well-settled. "The policy [certificate] is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. State ex rel. Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614, et seq., 267 S.W. 379, 381, 382. However, as said in 14 R.C.L. § 103, p. 931 [see 29 Am.Jur., Insurance, § 260, p. 644], the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.'" Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 370, 1 S.W.2d 99, 101–102(4, 5), 57 A.L.R. 615; Central Surety & Ins. Corp. v. New Amsterdam Cas. Co., 359 Mo. 430, 435, 222 S.W.2d 76, 78(1); Aetna Life Ins. Co. of Hartford, Conn. v. Durwood, Mo., 278 S.W.2d 782, 786(2, 3). And, in determining whether a policy contract is ambiguous, we should view it through the same eyeglasses that we use in reading other contracts. Central Surety & Ins. Corp., supra, 359 Mo. loc. cit. 438, 222 S.W.2d loc. cit. 80(4, 5); Henderson v. Massachusetts Bonding & Ins. Co., 337 Mo. 1, 6, 84 S.W.2d 922, 924(1); Sulzbacher v. Travelers Ins. Co., 8 Cir., 137 F.2d 386, 391 (10).

*The choice of words, syntax, and punctuation alike* point to defendant's construction and, by the same token, militate against plaintiff's construction. To accept plaintiff's construction, it becomes necessary to ignore the fact that the opening language is modified by two *parallel* phrases (i. e., "*from* TUBERCULOSIS, CANCER, HEART DISEASE, or APOPLEXY" or "*from* any chronic disease * * *") and, in so doing, disregard and accord no effect (a) to the "or" immediately preceding "APOPLEXY" and (b) to the "from" immediately preceding "any chronic disease." Moreover, plaintiff's construction, "the *sense* of which is as though the word 'other' was inserted before the word 'chronic,'" literally makes

no "sense." For, of the four diseases named in the first modifying phrase (i. e., "TUBERCULOSIS, CANCER, HEART DISEASE, or APOPLEXY"), "apoplexy" is not a chronic disease[1] and "heart disease" may not be.[2] Granting that "an insurance policy is not necessarily to be construed in the manner of a (hopefully) painstaking lawyer," nevertheless I am unwilling to join in a holding that is designed, in effect, not only to discourage, dispirit and dismay that modicum of the legal profession who are "hopefully painstaking" in use of the English language but also to penalize, punish and mulct a client who seeks out counsel in that category.

Ambiguity is not to be predicated solely on a judicial belief that the same thought might have been "better or more accurately expressed" in other language [Terry v. New York Life Ins. Co., 8 Cir., 104 F.2d 498, 504(13)], or on the complexity of the sentence structure, for "complexity need not equate with ambiguity." State Bank of Poplar Bluff v. Maryland Casualty Co., 8 Cir., 289 F.2d 544, 547. And a contract is not rendered ambiguous by disagreement of the parties as to its meaning [Mickelberry's Food Products Co. v. Haeussermann, Mo., 247 S.W.2d 731, 738(6); Andrews v. St. Louis Joint Stock Land Bank, 8 Cir., 107 F.2d 462, 468(10), certiorari denied Cantley v. Andrews, 309 U.S. 667, 60 S.Ct. 592, 84 L.Ed. 1014, rehearing denied 309 U.S. 697, 60 S.Ct. 711, 84 L.Ed. 1036; National Pigments & Chemical Co. v. C. K. Williams &

Co., 8 Cir., 94 F.2d 792, 795(1)], or by the fact that others, whether lawyers or laymen, may have construed the same language differently. Orr v. Mutual Life Ins. Co. of New York, D.C.Mo., 57 F.2d 901, 903(4), affirmed 8 Cir., 64 F.2d 561; Terry, supra, 104 F.2d loc. cit. 503–504. In the language of the late Judge Merrill E. Otis, a perspicacious scholar and courageous jurist: "If we say that language becomes ambiguous because some one contends it is ambiguous or some other concludes it is ambiguous, we save ourselves much labor, but we have applied a test that scarcely will stand examination. Unless we can point out in language we are considering wherein it has a double meaning, we are not justified in saying it is ambiguous, however many learned judges and unlearned laymen have voted 'yes' upon the question, 'Is it ambiguous?'" Orr, supra, 57 F.2d loc. cit. 903.

It would be well-nigh impossible to draft any contract of insurance in such language as would afford protection to all insureds against their own carelessness or incompetence in construction thereof and as would not be of uncertain meaning to some of them. But "'[w]ords cannot be said to be ambiguous because they are unintelligible to a man who cannot read; nor is a written instrument ambiguous or uncertain merely because an ignorant or uninformed person may be unable to interpret it. *It is ambiguous only when found to be of uncertain meaning by persons of competent skill and information.*'" Commonwealth Casualty

---

1. "Apoplexy" is defined as: "A *sudden* diminution or loss of consciousness, sensation, and voluntary motion, caused by hemorrhage into the brain from rupture of an artery, or by sudden anemia of a part of the brain from obstruction of its artery, either by the formation of a clot or by the lodgment of an embolus;— commonly called *stroke*." Webster's New International Dictionary (2nd Ed.), p. 127. "'*Apoplexy*' is a non-medical term which is usually used to describe what is popularly known as a 'stroke.' It implies a *sudden* attack of occlusion or hemorrhage involving an artery in the brain, with marked neurological deficits

(predominantly paralysis)." Gray, Attorneys' Textbook of Medicine (3rd Ed.), Vol. 2, § 91.01. See Maloy, Medical Dictionary for Lawyers (1942), p. 42; Dorland, The American Illustrated Medical Dictionary (21st Ed.), p. 130; Cecil, Textbook of Medicine (7th Ed.), p. 1575.

2. This is demonstrated in the principal opinion, where it is held that the insured, who (according to plaintiff-beneficiary) "had no heart trouble or heart disease prior to the day of his death" and who died of a "coronary occlusion" with only "8 hours" intervening "between onset and death," died of "heart disease."

Co. v. Aichner, 8 Cir., 18 F.2d 879, 883; Ransdell v. North American Accident Ins. Co., 275 Ky. 507, 122 S.W.2d 114, 117; 1 Greenleaf on Evidence, § 298, p. 478. Believing that the average reader should have no serious difficulty in arriving at the meaning of the language under discussion, if it be perused with the ordinary care which the law requires [Commonwealth Casualty Co., supra, 18 F.2d loc. cit. 883], I am of the opinion that the certificate is not *"reasonably or fairly* susceptible of different constructions" and that therefore it is not ambiguous. State ex rel. National Life Ins. Co. v. Allen, 301 Mo. 631, 638, 256 S.W. 737, 739(3).

Entertaining proper respect for the views of others, I nevertheless am impelled to give voice to my own persuasion that the principal opinion strains mightily to find (to me nonexistent) ambiguity. I would accord to the language of the unidentified but painstaking draftsman of the certificate what I believe to be its plain and intended meaning, which would result in reversal of the judgment nisi.